1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CURTIS T. HOLDEN,

    Defendant.

No. CR-11-2064-RHW

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS, *INTER ALIA***

On February 16, 2012, the Court held a hearing to address two pending motions. Jill Bolton was present for the Government; Phillip Wetzel appeared on behalf of the Defendant. Defendant appeared by telephone. At the hearing, Mr. Wetzel made an additional motion to continue the case. The Court rules as follows.

**A.  Defendant's Motion to Dismiss**

Responding to the 59 count Indictment against him, the Defendant moves to dismiss Counts 41 through 56 because they are outside the five-year limitations period. 18 U.S.C. § 3282(a). The Government alleges that the Defendant committed health care fraud by billing Medicare and Medicaid for procedures never performed. The sixteen challenged counts relate to visits by Dr. Michael Lee to patients in Garden Village, a residential nursing facility. Dr. Lee was an associate of the Defendant's and

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* \* 1**

submitted his billing sheets to the Defendant for review. The Government alleges that the Defendant would alter these records before transmitting them to Medicare/Medicaid for reimbursement by "up-coding" the treatments to reflect a higher level of service and receive more compensation. Dr. Lee treated patients at Garden Village on January 6, 2006. The Defendant, who starts the limitations period on the date of treatment, contends that the April 21, 2011 Indictment exceeds the five-year period by three months.

The Government responds that these counts are within the five-year period for two reasons: (1) the period begins from the date the Defendant received payment, not the date of treatment, and the dates of payment are within five years of the Indictment; and (2) they encompass conduct that is part and parcel of a continuing scheme to defraud, any part of which falling within the period brings in the entire scheme.

### 1. The Health Care Fraud Statute

Counts 41 through 56 charge the Defendant with violating 18 U.S.C. § 1347, which provides:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice
>
> * * *
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be [punished].

Id.

### 2. Commencing the Limitations Period on Date of Payment

First, the Government argues that the Defendant's crimes were not complete, and the limitations period not triggered, until he received reimbursement from the health care benefit programs. The Defendant responds that the scheme is "executed"

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* * 2**

1   when he submits a claim for reimbursement and the statute of limitation counts from
2   that date. Execution of the scheme is not dependent, he argues, on receipt of money.
3   Disposition of this issue turns on the Court's interpretation of what constitutes
4   "execution" of a scheme to defraud, an inquiry which is factually specific. United
5   States v. Molinaro, 11 F.3d 853, 860 (9th Cir. 1993). Several factors assist this
6   interpretation, including the ultimate goal of the scheme, the nature of the scheme, the
7   benefits intended, the interdependence of the acts, and the number of parties involved.
8   United States v. De La Mata, 266 F.3d 1275, 1288 (11th Cir. 2001).

9       The Defendant relies on United States v. Reitmeyer, which held that an offense
10  is "executed" under the Major Fraud Act when a defendant submits a fraudulent claim.
11  356 F.3d 1313, 1318 (10th Cir. 2004). That court reasoned that actual receipt of the
12  intended proceeds is immaterial because the risk to the government begins at the
13  moment of submission. Moreover, a defendant's work is done upon submission; he
14  does not "need to engage in any additional conduct to realize the ultimate goal of [his]
15  scheme." Id. Important here, the Major Fraud Act is virtually identical to the health
16  care fraud statute, with one material difference: It punishes the knowing execution or
17  attempted execution of a scheme *with the intent* to obtain money from the government
18  fraudulently. 18 U.S.C. § 1031. The italicized portion is omitted in the health care
19  offense. The Reitmeyer Court relied on this language to support its holding that
20  execution is complete upon submission of the claim since, compared against attempted
21  executions, the "phrase 'with the intent to obtain money' would become largely
22  superfluous with respect to executed schemes." Id. at 1319.

23      The absence of the specific intent element in the health care fraud statute
24  supports the Government's conclusion that execution of a scheme in that context is
25  not complete until money is paid. While it is possible to attempt a scheme that fails
26  because the fraudulent claim was lost in the mail, for example, it seems more likely
27  that the "attempts" Congress conceived were defendants submitting fraudulent claims
28  that benefit programs thereafter refused to pay. This reasoning is in line with Ninth

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* * 3**

Circuit precedent about other crimes of fraud. *See* <u>Carroll v. United States</u>, 326 F.2d 72, 86 (9th Cir. 1963) (holding that the limitations period for securities fraud begins when the defendant receives the fraudulent proceeds); *see also* <u>Kann v. United States</u>, 323 U.S. 88, 94 (1944)  (holding that mail fraud "reaches fruition" when defendant receives proceeds). The Court finds that "execution" requires receipt of the fraudulent proceeds, a conclusion that requires denying the Defendant's motion on each count the Government can prove involved payment occurring on or after April 21, 2006, five years from the Indictment.

It is here where the Government largely fails. Its evidence shows only four instances where the payment date is within the limitations period, and only one of these four patients, "L.B." (Count 42), is listed in the Superseding Indictment.[1] To the contrary, the exhibit demonstrates that the Defendant received payments for the patients involved in Counts 41, 43, and 46-56 on or before March 24, 2006, outside the five-year period.  The exhibit omits information about payments for "D.P" and "S.F.," Counts 44 and 45. Therefore other than for L.B., the Government does not prove that the Defendant received fraudulent payments for Garden Village patients after April 21, 2006.

The evidence currently before the Court justifies denying the Defendant's motion on Count 42 only.

### 3.  Continuing Scheme to Defraud

Second, the Government argues that the Garden Village counts are part and parcel of a continuing scheme to defraud. With regard to continuing offenses, the statute of limitations is reset each time the defendant acts to further the offense. Under the Government's theory, each submission of a fraudulent claim is merely an act to further the greater scheme, so the limitations period runs on the date of the last execution, in this case, well into 2007.

---

[1]      The other patients, "A.C.," "M.R.," and "I.T.," do not appear in Counts 41 through 56 of the Superseding Indictment.

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* * 4**

Although offenses are presumed not to be capable of continuing, <u>Toussie v.</u> <u>United States</u>, 397 U.S. 112, 115 (1970), the Government makes a persuasive argument that health care fraud is a continuing offense by analogizing to the bank fraud statute. The Ninth Circuit deems bank fraud, which is virtually identical to health care fraud, to be a continuing offense. <u>United States v. Nash</u>, 115 F.3d 1431, 1441 (9th Cir. 1999) (holding bank fraud—the knowing execution of a scheme to obtain money under the control of a bank—to be a continuing offense); *cf.* 18 U.S.C. § 1344 (defining health care fraud as the knowing execution of a scheme to obtain money under the control of a health care benefit program); *see also* <u>United States v.</u> <u>Mermelstein</u>, 487 F. Supp. 2d 242, 250 (E.D.N.Y. 2007) (finding health care fraud to be a continuing offense). The Government argues that the continuing offense renders all the charged counts within the limitations period.

But it is confusing the term here. It charged each of the Defendant's alleged fraudulent submissions as a separate offense, and it is permitted to do so. <u>United</u> <u>States v. Awad</u>, 551 F.3d 930, 938 (9th Cir. 2009). Because the Indictment is structured in this way, however, it does not invoke the doctrine of continuing offenses. "A continuing offense is one which is not complete upon the first act, but instead continues to be perpetrated over time." <u>De La Mata</u>, 266 F.3d at 1289. Here, the Indictment alleges that a new crime occurred—implying the previous one had ceased—each time the Defendant submitted an alleged fraudulent claim. Had the Government lumped all the Garden Village billings together and charged them as a single count, perhaps it would qualify as a continuing offense and satisfy the statute of limitations. *See* <u>United States v. King</u>, 200 F.3d 1207, 1213 (9th Cir. 1999) (holding that each execution of a scheme to defraud need not give rise to its own charge). That is not the situation before the Court now.

This conclusion is supported by the <u>Nash</u> case itself, the primary authority on which the Government relies. There, <u>Nash</u> applied for and received a loan. In the course of obtaining it and several repayment extensions, he fabricated a promissory

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* * 5**

1  note and made a series of fraudulent misrepresentations to the bank. Unlike here, the
2  government charged all these acts—the forged promissory note and each fraudulent
3  representation—as a single count of bank fraud, even though, like here, it could have
4  charged separate counts. After Nash was convicted, he argued that bank fraud was a
5  continuing offense, and he should be sentenced according to the sentencing guidelines
6  that took effect November, 1987. The Court held that bank fraud could be a
7  continuing offense, but that the date of the last act in furtherance of the scheme, a
8  fraudulent application for an extension in June, 1987, pre-dated the guidelines's
9  enactment. Thus, Nash does not stand for the proposition that separate *counts* of bank
10 fraud can be grouped together as a continuing offense, but rather that separate *acts* can
11 be. This argument does not justify denying the Defendant's motion.

12     In sum, the Court grants the Defendant's motion, in part, and dismisses Counts
13 41, and 43-56 without prejudice.

14 **B. Defendant's Motion for Discovery**

15     The Defendant seeks the standard materials from the Government. AUSA
16 Bolton responds that the Government has already provided the requested discovery
17 or will do so when it becomes available. At the hearing, defense counsel renewed his
18 request for notice of Rule 404(b) evidence, but the Government indicated it did not
19 intend to offer any at trial.

20     In order to assist the Defendant in preparing his case, the Court directs the
21 Government, on or before April 1, 2012, to provide the Defendant with a list detailing
22 the exhibits it anticipates using that are extraneous to those discernable from the
23 alleged fraudulent claims listed in the Superseding Indictment. It may supplement its
24 list later upon a showing of good faith.

25 **C. Defendant's Motion to Continue**

26     Finally, at the hearing defense counsel expressed that he would be unable to try
27 this case on April 16, 2012. The Government indicated it had no objection. The Court
28 finds that the complexity of the case dictates a continuance and grants the motion.

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* * 6**

Accordingly, **IT IS HEREBY ORDERED**:

1. The Defendant's Motion to Dismiss (ECF No. 54) is **GRANTED**, in part. Counts 41 and 43 through 56 of the Superseding Indictment are **DISMISSED, without prejudice**.

2. The Defendant's Motion for Discovery (ECF No. 53) is GRANTED, in part. The Government shall make the disclosures required by Rule 16, <u>Brady</u>, <u>Giglio</u>, and the Jencks Act. The remainder of the motion is denied with leave to renew. The Government shall make the exhibit disclosure described in this Order by April 1, 2012.

3. The Defendant's Motion to Continue is **GRANTED**. The jury trial set for April 16, 2012, is **STRICKEN**. A jury trial is **SET** for **October 29, 2012**, in Yakima, Washington. Counsel shall appear at 8:30 a.m. the first day of trial; jury selection shall begin at 9:00 a.m.

4. The pretrial conference on March 27, 2012 is continued to **May 16, 2012,** at **9:30 a.m.** in Spokane.  The Defendant may appear by telephone by calling the Court conference line at (509) 458-6382.

5. All pretrial motions shall be filed on or before **October 1, 2012.**

6.  Pursuant to 18 U.S.C. § 3161(h)(7)(A), the time between April 16, 2012, the current trial date, until October 29, 2012, the new trial date, is **DECLARED EXCLUDABLE** for purposes of computing time under the Speedy Trial Act. The

///

///

///

///

///

///

Court finds that Defendant's interest in preparing for trial outweighs the interests of

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* \* 7**

1    the public and Defendant in a speedy trial.

2         **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

3    Order and forward copies to counsel.

4         **DATED** this 29th day of February, 2012.

5

6                        *s/Robert H. Whaley*
                         ROBERT H. WHALEY
7                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22   dismiss.ord.wpd

23

24

25

26

27

28

**ORDER GRANTING MOTION TO DISMISS, *INTER ALIA* * 8**